## CRUTCHER et al. v. HICKS.

Court of Appeals of Kentucky.

March 20, 1953.

Rehearing Denied May 22, 1953.

Boehl, Stopher, Kilgarriff, Graves & Deindoerfer, Louisville, for appellant.

Mahan, Davis & Mahan, Louisville, for appellee.

DUNCAN, Justice.

Appellee recovered a judgment for $12,000 for personal injuries and damage to his automobile resulting from a collision with a truck owned by appellant, W. E. Crutcher, and driven by appellant, George

W. Beckett. The only grounds urged for reversal are: (1) that the court erred in failing to grant a new trial because of the failure of certain jurors to properly answer questions propounded on voir dire examination; and (2) the damages awarded were excessive.

Upon voir dire examination, counsel for appellants propounded the following question to the entire jury panel: "Have any of you ever made claim against anyone for damages or have any of you filed suit against anyone for damages?" After the trial, it was discovered that two members of the jury, Paul Schum and W. G. Yager, whose silence was properly interpreted as a negative answer, had previously been involved in litigation in which they had asserted claims for damages. The records of the Jefferson Circuit Court disclose, and it is admitted, that Yager filed a suit for damages in 1934, and Schum was plaintiff in two similar actions in 1909. Appellants insist upon the authority of Drury v. Franke, 247 Ky. 758, 57 S.W.2d 969, 88 A.L.R. 917, and Olympic Realty Co. v. Kamer, 283 Ky. 432, 141 S.W.2d 293; that the failure of members of the jury to properly answer the question entitles appellants to a new trial as a matter of law. On the other hand, appellee insists that the ultimate question to be determined is whether or not appellants were in any way prejudiced by the failure of the jurors to disclose the information, and that the damage claims in which the jurors were involved are so remote in point of time that probable bias or resulting prejudice is neither shown nor can be presumed.

In the Drury case [247 Ky. 758, 57 S.W. 2d 984], the entire panel of eighteen jurors was asked the question: "Have any of you ever been in any way involved in an automobile collision, or is there now pending either by or against you, any litigation growing out of an automobile collision?" None of the panel responded, and it was discovered after the verdict that four of the jurors had been theretofore involved in automobile collisions. The opinion specifically points out that the collisions in which three of the jurors had been involved had occurred a number of years before, were of a trifling nature, and had probably passed out of their memories. As to the fourth juror, it was said:

"As to the juror Howard, a different situation is presented. He had been involved in an automobile collision comparatively recently, and a claim was pending against him which, however, had not reached the point of litigation."

A careful reading of the opinion convinces us that it was only because of the action of the juror Howard that a new trial was properly awarded.

It is true that some of the language of the Drury opinion indicates that false information given on voir dire examination which prevents or embarrasses the full, unrestricted exercise of the right of peremptory challenge affects the legality of the panel and the verdict is illegal. Even if we accept the extreme and highly technical view which some parts of the opinion would indicate, it does not necessarily follow that false or misleading information elicited on voir dire examination will invariably and in all cases result in an illegal verdict. If the false information is of such character as to indicate probable bias on the part of the juror, it may be presumed that a free exercise of the right of peremptory challenge has been so restricted as to result in prejudice to the party affected. However, if information innocently withheld or given, although false, is so insignificant or trifling as to indicate only a remote or speculative influence on the juror, the right of peremptory challenge has not been affected.

There is bound to be a point beyond which reason will not permit us to go in setting aside verdicts upon the falsity of information elicited from jurors. A wide range of interrogation is permitted on voir dire examination, and if we accept the premise urged by appellant upon the authority of the Drury case, voir dire examination may be transformed into a trap into which the most careful and conscientious juror may fall. We do not think the opinion establishes the rule which is urged. If it did so, that rule was abandoned in the later case of Olympic Realty Co. v. Kamer,

supra [283 Ky. 432, 141 S.W.2d 298], where it was said:

"The principle so declared and upheld is clearly in furtherance of a litigant's right guaranteed to him by the law to have his case tried by an impartial jury whose members are uninfluenced by any fact which would be calculated to bias their judgment in appraising the testimony adduced, and upon which alone their verdict must be formulated. *Of course, the rule would not apply where the facts sought to be solicited possess no pertinency, nor would have or could have but* a remote speculative influence on the juror; * * *." (Emphasis ours.)

In the case of Pearson v. Gardner Cartage Co., Inc., 148 Ohio St. 425, 76 N.E.2d 67, 76, the Ohio Supreme Court quoted with approval a part of the written memorandum of the trial judge, commenting as follows upon the rule urged here:

"When jurors are being impaneled in a case many of them are enjoying that experience for the first time and they are not as collected and calm sitting in the jury box as they might be under different conditions, and it would be hard for anyone to conceive that these jurors deliberately fail to remember and disclose these accidents. The ultimate question is whether the parties to the lawsuit have been in any way prejudiced by the failure of jurors to recall accidents, most of them minor and many of them years after their experience.

"It has become a new form of indoor sport for plaintiffs, and, or, defendants after the rendering of an adverse verdict to them to start on a quiet search in an effort to discover some failure upon the part of one or more of the jurors to disclose a prior accident which has grown very hazy in their memory."

■ In the present case, juror Schum had been involved in litigation concerning a damage claim asserted forty-two years before the trial. Juror Yager's claim had been litigated seventeen years previously. It is probable that they had forgotten the incidents or considered them so insignificant as to not require disclosure. Whatever the explanation for their failure to respond, the information withheld was so remote in point of time as to indicate no probable bias. A new trial was not warranted on this ground.

■ We finally consider appellants' contention that the damages were excessive. Deducting special damages of $700 for the car and $500 for medical expenses, there remains a balance of $10,800 which was awarded on account of the injuries. Appellee's evidence is to the effect that he suffered pain in his neck and back as a result of the accident. He visited Dr. Charles W. Jefferson, a surgeon on traumatic injuries, who examined him and sent him to a hospital, where he remained for sixteen days, being placed in a neck and halter traction. After he left the hospital, he wore a neck brace continuously for five months and thereafter has worn it about one-third of the time. He is still under a physician's care, is suffering continuously, and he is unable to perform any work requiring substantial muscular activity. Dr. Jefferson and Dr. J. Lester Reed diagnosed appellee's injuries as a cervical spine contusion and sprain with traumatic neuritis and a possible cervical disc injury, which may require a major surgical operation. Dr. Reed testified that X-rays revealed mild hypertrophic lipping of the bodies of the fifth and sixth cervical vertebra and a questionable narrowing of the intervertebral spaces between these two bodies. Dr. Reed further testified that he would estimate the appellee to have a partial permanent disability of from fifteen to twenty per cent of the body as a whole and that the percentage of disability might conceivably increase in the future.

Appellants introduced the deposition of Dr. R. Glen Spurling, a neurological surgeon, who testified that his examination of appellee and an examination of the X-ray plates revealed no objective indication of injury to the cervical spine.

Appellants cite H & S Theatres Co. v. Hampton, 300 Ky. 677, 190 S.W.2d 39, in support of their contention that the damages are excessive. That case is distinguishable from the present case because the physicians who testified there stated that they found no objective symptoms of the alleged injury and the evidence was not positive or satisfactory to show permanent injuries. There was positive and satisfactory evidence in the present case which, although contradicted, tended to prove objective symptoms of the injury and permanency of the disability. We have concluded that the damages awarded were not excessive.

The judgment is affirmed.