**PHOTOSTAT CORPORATION and Lloyd Randall Ward, Jr., Appellants,**

v.

**Harold E. BALL, Appellee.**

**No. 7745.**

United States Court of Appeals
Tenth Circuit.

Nov. 25, 1964.

784

John J. Alder, Kansas City, Kan. (H. S. Roberts, Kansas City, Kan., was with him on brief), for appellants.

Robert H. Bingham, Kansas City, Kan. (Lee E. Weeks and George Maier, Jr., Kansas City, Kan., were with him on brief), for appellee.

Before MURRAH, Chief Judge and BREITENSTEIN and HILL, Circuit Judges.

MURRAH, Chief Judge.

On this appeal, the defendant-appellant complains of the refusal of the trial court to grant a new trial for failure of sitting jurors to fully answer questions propounded on voir dire concerning their acceptability to sit in the case. The pertinent facts are these.

The suit for personal injuries arose out of an automobile accident, and came on for trial in the latter part of 1963. In the course of voir dire examination by the court, the panel was specifically asked whether any member had ever been a plaintiff or brought an action against anyone else seeking to recover for personal injuries for negligence on the part of another. One prospective juror answered that his wife was involved in an automobile accident in 1956, but her claim had been settled without suit. The court then inquired of the panel whether anyone else "has had any claim growing out of the alleged negligence of another?"; or if any member of his immediate family had ever been so involved. At that point, Juror Schmidt answered that several

years ago his daughter was struck by an automobile, but she was not injured and the matter was amicably settled without suit. The court then inquired if anyone else "has had any member of his or her immediate family involved in such matter"; and further, "whether any member of your immediate family had any claim asserted against you or your immediate family by anyone else who claimed to have been injured?" There was no further response by any of the other prospective jurors to these questions. The trial of the case resulted in a substantial verdict for the plaintiff.

On a hearing on the motion for new trial, Juror Schmidt testified that in addition to his daughter's claim, mentioned on voir dire, he and his wife had been involved in an accident in 1959 similar to the one in suit; that the claim had been settled without suit for the sum of $2000, paid by an insurance company. Another juror testified that she had been involved in an automobile accident in 1962, resulting in a whiplash neck injury, and that she had been paid $409.68 by an insurance company. Another juror testified that his wife had been involved in an automobile accident in 1958 and had been paid the sum of $900 in settlement of her claim. He also testified that about "12 or 13 years ago" he had a claim for injuries arising out of an automobile accident for which he had been paid approximately $1300 for personal injuries and property damage in an out-of-court settlement. He further testified that over the years he had been involved in five or six accidents "of a minor nature", none of which resulted in a lawsuit. The wife of another juror testified that her husband had been involved in an automobile accident. She did not fix the time or nature of the accident. The husband-juror was then called by the plaintiff. He testified that the accident was of a minor nature and that he had received a settlement of $100 for personal inconvenience and damages to his automobile. All of these jurors testified that they were under the impression that the court's inquiries on

voir dire related only to lawsuits and not to claims.

At the conclusion of the hearing on the post-verdict motion, the court specifically found that "no single juror intentionally made any misstatement or intentionally intended to fail to reveal anything that would have been of value to the court or counsel." The court was furthermore convinced that "this was a good jury, a fair jury, and this was a fair trial as far as the jury was concerned."

We accept the trial court's finding with respect to the good intentions of these jurors, and also the view that they were not disqualified for cause, or in any event, that the court could have justifiably denied a challenge for cause. But our lawsuit does not turn on the misconduct of these jurors. The decisive question is whether failure to disclose pertinent facts, either intentionally or unintentionally, had the effect of substantially impairing the right of peremptory challenge.

■ The Constitution does not provide any formula or procedures for the ascertainment of a mental attitude or state of mind from which requisite impartiality is to be determined. See United States. v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78; Frazier v. United States, 335. U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Dennis v. United States, 339 U.S. 162,. 70 S.Ct. 519, 94 L.Ed. 734. The common law and the statutes have, however, laid down definite safeguards for the effectuation of the constitutional guaranty. The common law cautiously excludes from the jury box for implied prejudice persons. occupying a certain status or relationship to a litigant. See Cooley's Blackstone, Vol. 2, p. 223. In those enumerated categories the law conclusively presumes bias. or partiality. See United States v. Burr,. 25 Fed.Cas. pp. 49, 50, No. 14,692. See also Mr. Justice Frankfurter dissenting in Dennis v. United States, supra, 339 U.S. p. 181, 70 S.Ct. p. 525.

■ Statutory law has relaxed the rigidity of the common law, and with enumerated exceptions has committed to the trial judge the power to excuse or

exclude for good cause any person called as a juror. 28 U.S.C. § 1863. And, all challenges for cause or favor are determined by the court. 28 U.S.C. § 1870. "[W]hile impaneling a jury the trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor." Dennis v. United States, supra, p. 168, 70 S.Ct. p. 521.

Then, as if out of an abundance of precaution, the statute preserves the common-law right to peremptorily challenge a prospective juror for suspicion of bias or partiality. The right is a traditional, arbitrary and capricious one and "it must be exercised with full freedom, or it fails of its full purpose." Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011. Thus, under statutory law, the court is the judge of actual bias, but counsel is the sole and exclusive judge of whom he shall challenge for suspected bias or prejudice against his client's cause. No one will gainsay that the denial or substantial impairment of the statutory right of peremptory challenge is prejudicial to the constitutional right to a fair and impartial jury.

The very purpose of voir dire examination is to develop the whole truth concerning the prospective juror's state of mind, not only to enable the trial judge to determine actual bias, but to enable counsel to exercise his intuitive judgment concerning the prospective jurors' suspected bias or prejudice. "[T]he right of challenge includes the incidental right that the information elicited on the voir dire examination shall be true." Drury v. Franke, 247 Ky. 758, 57 S.W.2d 969, 985, 88 A.L.R. 917, 941. As so well stated by Judge Vogel, while a trial judge, "The answers to questions put by the Court necessarily form the basis for the Court's excusing a juror on its own motion or challenges for cause * * *

and the exercise of peremptory challenges by each side. Necessarily, it is expected and required that jurors in their answers shall be completely truthful and that they shall disclose, upon a general question, any matters which might tend to disqualify them from sitting on the case for any reason. It therefore becomes imperative that the answers be truthful and complete. False or misleading answers may result in the seating of a juror who might have been discharged by the Court, challenged for cause by counsel or stricken through the exercise of peremptory challenge. The seating of such a juror could and probably would result in a miscarriage of justice and therefore courts and attorneys, who are officials of the court, are ever mindful of the importance of jurors' answers to questions regarding their qualifications." United States v. Freedland, D.C., 111 F.Supp. 852, 853.[1]

We have said that a "juror's answer to questions touching his state of mind is primary evidence of his competency", and in case of doubt, justice demands that the challenge for cause be allowed. United States v. Chapman, 10 Cir., 158 F.2d 417, 421. In Consolidated Gas and Equipment Company of America v. Carver, 10 Cir., 257 F.2d 111, we recognized the burden on the complaining litigant in a post-verdict hearing to show that failure of a juror to fully and truthfully answer questions propounded to the panel concerning his experience in similar litigation resulted in prejudice to his cause. We embraced the settled rule which moves the court to act only upon a showing of probable bias of the juror with consequent prejudice to the unsuccessful litigant. Courts act on probabilities, not possibilities, and if the suppressed information is so "insignificant or trifling" as to indicate only a remote or speculative influence on the juror, the right of peremptory challenge has not been affected. See also Crutcher

---

1. See Report of the Conference Committee on the Operation of the Jury System, approved by the Judicial Conference of the United States, September 1960. 26 F.R.D. 409, 465.

See also: Selection of Jurors by Voir Dire Examination and Challenge, 58 Yale L.J. 638.

v. Hicks (Ky.), 257 S.W.2d 539, 38 A.L.R. 2d 620.

The prospective juror in Consolidated Gas and Equipment Company of America v. Carver, supra, was then a plaintiff in a state court suit for actual and exemplary damages. And, the suit in which he was a plaintiff and the one in which he was a prospective juror "bore marks of similarity". In these circumstances we were of the view that if the juror had disclosed the pendency of his action in the state court, he would have been excused for cause, and if not for cause, the defendant would have exercised one of his peremptory challenges; that "[w]hether so intended or not, the effect of the silence of the juror was to deceive and mislead the court and the litigants in respect to his competency. And such deception and misleading had the effect of nullifying the right of peremptory challenge as completely as though the court had wrongfully denied such right." Id. p. 115.

In this post-mortem inquiry, we cannot know of course what counsel would have done with the suppressed information. Nor can we take his post-mortem word for it. But we need not presume to speculate on the judgment he would have made. It is enough, we think, to show probable bias of the jurors and prejudice to the unsuccessful litigant if the suppressed information was of sufficient cogency and significance to cause us to believe that counsel was entitled to know of it when he came to exercise his right of peremptory challenge. If so, the suppression was a prejudicial impairment of his right.

None of the jurors in our case or any of their immediate family were or had been plaintiffs in a pending suit. On the record, their involvement in automobile accidents with resultant claims were inadvertently withheld due to a misunderstanding of the questions on voir dire. But the information was withheld through no fault of the unsuccessful litigant. But it did involve experiences of these jurors which gave rise to claims for damages and for which they were paid. When these experiences are considered separately or in totality, we think they were of such nature and gravity as to generate an attitude of probable bias in favor of the plaintiff and against the defendant's cause. In any event, we have no doubt that counsel was entitled to know about them.

The case is accordingly reversed with directions to grant a new trial.