**Billy G. GREENWOOD, et al.,
Plaintiffs-Appellants,**

v.

**McDONOUGH POWER EQUIPMENT, INC., Defendant-Appellee.**

No. 80–1698.

United States Court of Appeals,
Tenth Circuit.

Sept. 3, 1982.

Dan L. Wulz, Topeka, Kan. (Gene E. Schroer, Topeka, Kan., with him on the brief) of Jones, Schroer, Rice, Bryan & Lykins, Topeka, Kan., for plaintiffs-appellants.

Donald Patterson, Topeka, Kan. (Steve R. Fabert, Topeka, Kan., with him on the

* Chief Judge of the United States District Court for the District of Wyoming, sitting by designa-

brief) of Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendant-appellee.

Before BARRETT and McKAY, Circuit Judges, and BRIMMER,* District Judge.

McKAY, Circuit Judge.

Billy G. Greenwood and his parents, John and Freda Greenwood, appeal from an adverse jury verdict and related judgment in a products liability action predicated upon strict liability. Jurisdiction rests upon diversity of citizenship. The facts will be discussed only insofar as relevant for purposes of our decision.

On May 25, 1976, Jeff Morris, thirteen years of age, was mowing the Morris yard on a riding mower manufactured by appellee, McDonough Power Equipment, Inc., pursuant to his father's instructions. Jeff had previously operated the mower approximately thirty hours over a three- to four-year period.

On this particular day, Troy Greenwood, Billy's older brother, was riding on the mower with Jeff. The Morrises and Greenwoods were next-door neighbors. While operating the mower, Jeff watched the left front wheel to make certain that he was getting an even cut. Jeff was aware that Billy, two years of age, and several other children, were playing at and around a swingset in the back yard, approximately 25 feet from the area where he was mowing.

While Jeff was mowing the yard, Billy, undetected by Jeff, approached the mower to pick up a doll in the path of the mower. Immediately prior to the accident, Jeff, upon realizing that Billy was in the path of the mower, shouted "watch out." Fearing that he could not stop in time, Jeff turned the mower to the right to avoid hitting Billy. During the course of the turn, the left front tire of the mower went over Billy's left foot. Billy subsequently kicked at the mower with his right foot but both feet went under the mower where they

tion.

contacted the mower blade, resulting in the loss of both feet.

At the time of the accident, Freda Greenwood was in her home doing housework. Although she was aware that Troy and Billy were playing in the Morris yard, she was unaware that Jeff was mowing the yard until Troy notified her of the accident.

In their complaint, the Greenwoods alleged that: the mower was of defective design and workmanship, and negligently constructed; the defects of the mower were hidden and latent and could not be discovered by general observation or superficial examination; the defects were due to McDonough's negligence; the mower was not fit for its intended purpose; Billy sustained permanent disability; and that they, as Billy's parents, sustained severe emotional shock and damages.

In its answer, McDonough denied that the mower was negligently or improperly designed or that it was unfit for its intended use. McDonough also alleged that Billy's injuries were caused by the combined negligence of Ira Morris (Jeff's father), as the owner of the mower, Jeff Morris, as the operator of the mower, and John and Freda Greenwood, as the persons responsible for Billy's supervision.

Following several pretrial motions, the case proceeded to trial on the basis of strict liability. The Greenwoods alleged that the mower was defective in that: the blade was below the deck of the mower; the blade bar, as manufactured, was not within McDonough's manufacturing tolerances thus causing the blade level to be below the deck, aggravating the injury to the left foot; the blade was improperly designed; the blade brake-clutch was defectively designed because it did not provide a deadman control for stopping, and because of its lack of durability.

The trial extended over a three-week period. McDonough's defense throughout trial was that the mower was not defectively designed and that the combined negligence of the Morrises and Greenwoods gave rise to the accident and consequent injuries sustained by Billy. The jury, in accordance with Kansas law, was allowed to compare the fault of McDonough, Jeff Morris, Ira Morris, and Freda Greenwood. *See* Kan. Stat.Ann. § 60–258a (1976). The jury returned a verdict finding McDonough 0% at fault, Jeff Morris 20% at fault, Ira Morris 45% at fault, and Freda Greenwood 35% at fault. The jury assessed damages at $0.00. Upon being instructed by the trial court that, inasmuch as Billy had lost both feet he had definitely suffered some damages, the jury reconvened for further deliberations and found that Billy had been damaged in the amount of $375,000.00. The district court thereafter entered judgment that Billy take nothing, that the action be dismissed on the merits, and that McDonough recover its costs.

The Greenwoods contend the district court erred in denying their motion to approach the jurors and in denying leave to subpoena the jurors to give testimony at the hearing on their motion for a new trial. They also contend they are entitled to a new trial because their right to peremptory challenge was impaired.

The judgment in favor of McDonough was entered on April 25, 1980. On April 29, 1980, the Greenwoods filed a motion to approach the jurors contending that "plaintiffs are of recent information and belief that the jury foreman's, Mr. Payton, son may have been injured at one time, which fact Mr. Payton did not state in response to juror voir dire questions." Record, vol. 2, at 325.

The Greenwoods' attorney, in his *voir dire*, had asked the prospective jurors:

Now, how many of you have yourself or any members of your immediate family sustained any severe injury, not necessarily as severe as Billy, but sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain or suffering, that is you or any members of your immediate family?

Record, vol. 21, at 39. One juror answered affirmatively, and after additional questioning by Greenwoods' attorney as to his

impartiality, was allowed to remain on the jury. Mr. Payton did not respond.

On April 30, 1980, the district court entered a memorandum and order denying the Greenwoods' motion to approach the jurors. The district court summarized its denial of the motion by observing that interviews of jurors by persons connected with a case are not favored except in extreme situations, citing *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), and *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). The district court also adopted, by appending, *Silkwood v. Kerr-McGee Corp.*, 485 F.Supp. 566 (W.D.Okl. 1979), declaring it "controlling here."

On May 1, 1980, the Greenwoods filed a second motion to approach the jurors which states:

Counsel for plaintiff shows to the court that to our best recollection and belief, Juror Payton did not answer counsel's question in the affirmative as to whether he or any member of his immediate family had ever been seriously injured. The Affidavit of John G. Greenwood attached affirms that Juror Payton's son was seriously injured in a truck tire explosion. Had voir dire questions been answered truthfully, further examination may have revealed grounds to challenge Juror Payton for cause, or affected counsel's decisions with respect to peremptory challenges.

Record, vol. 2, at 345. On May 5, 1980, the district court entered an order granting, in part, the Greenwoods' second motion:

Upon due consideration, but cognizant of the parties' need for a speedy ruling, the Court, in an abundance of caution, has determined to grant the motion in a limited degree. The motion will be generally overruled with the exception that counsel for plaintiff will be allowed to inquire of juror Ronald Payton regarding alleged injuries sustained by his son from the explosion of a truck tire.

The inquiry should, of course, be brief and polite. Defense counsel must be present. The witness should not be unnecessarily inconvenienced. The inquiry should be undertaken telephonically or at a place convenient to the juror. The juror should not be summoned to Topeka solely for this purpose.

Counsel should be informed that the Court's review of the court reporter's notes of *voir dire* indicates that plaintiff's counsel's question should have elicited a response from the juror only if (1) his son was in an accident as alleged *and* (2) the son sustained a disability or suffered prolonged pain.

Record, vol. 2, at 348.

Counsel for both parties subsequently arranged for a conference call interview with juror Payton. During the course of the interview, which was not preserved as part of the record herein, juror Payton related that his son had received a broken leg as the result of an exploding tire. According to counsel for the Greenwoods, Payton related that "it did not make any difference whether his son had been in an accident and was seriously injured," "that having accidents are a part of life," and that "all his children have been involved in accidents." Appellants' Brief at 7. According to McDonough's counsel, Payton "did not regard [his son's broken leg] as a 'severe' injury and as he understood the question [the injury] did not result in any 'disability or prolonged pain and suffering'. As far as Mr. Payton is concerned he answered counsel's question honestly, and correctly, by remaining silent." Appellee's Brief at 18.

Both parties cite *Photostat Corp. v. Ball*, 338 F.2d 783 (10th Cir. 1964), in support of their respective positions that Mr. Payton's failure to disclose his son's accident during *voir dire* did, or did not, prejudice the Greenwoods' right of peremptory challenge.

In *Photostat* we held that when four prospective jurors in a negligence case arising out of an automobile accident withheld information as to their personal involvement in accidents with resulting claims, for which they were paid, a defendant was entitled to a new trial because of the prejudice to his right of peremptory challenge, even assuming that the jurors had good intentions and were not disqualified for cause. In *Photostat* we observed:

In *Consolidated Gas and Equipment Company of America v. Carver*, 10 Cir., 257 F.2d 111, we recognized the burden on the complaining litigant in a post-verdict hearing to show that failure of a juror to fully and truthfully answer questions propounded to the panel concerning his experience in similar litigation resulted in prejudice to his cause. We embraced the settled rule which moves the court to act only upon a showing of probable bias of the juror with consequent prejudice to the unsuccessful litigant. Courts act on probabilities, not possibilities, and if the suppressed information is so "insignificant or trifling" as to indicate only a remote or speculative influence on the juror, the right of peremptory challenge has not been affected. See also *Crutcher v. Hicks* (Ky.), 257 S.W.2d 539, 38 A.L.R.2d 620.

The prospective juror in *Consolidated Gas and Equipment Company of America v. Carver*, supra, was then a plaintiff in a state court suit for actual and exemplary damages. And, the suit in which he was a plaintiff and the one in which he was a prospective juror "bore marks of similarity". In these circumstances we were of the view that if the juror had disclosed the pendency of his action in the state court, he would have been excused for cause, and if not for cause, the defendant would have exercised one of his peremptory challenges; that *"[w]hether so intended or not, the effect of the silence of the juror was to deceive and mislead the court and the litigants in respect to his competency. And such deception and misleading had the effect of nullifying the right of peremptory challenge as completely as though the court had wrongfully denied such right."* Id. p. 115.

In this post-mortem inquiry, we cannot know of course what counsel would have done with the suppressed information. Nor can we take his post-mortem word for it. But we need not presume to speculate on the judgment he would have made. *It is enough, we think, to show probable bias of the jurors and prejudice to the unsuccessful litigant if the suppressed information was of sufficient cogency and significance to cause us to believe that counsel was entitled to know of it when he came to exercise his right of peremptory challenge.* If so, the suppression was a prejudicial impairment of his right.

338 F.2d at 786–87 (emphasis added).

Under *Photostat*, the failure of a juror to fully and truthfully answer questions propounded to the panel is deemed reversible error upon a showing of probable bias of the juror with consequential prejudice to the unsuccessful litigant. The withholding of insignificant or trifling information indicative of only a remote or speculative influence on the juror is not deemed prejudicial. A new trial is required, however, if the suppressed information is of "sufficient cogency and significance" to cause us to believe that counsel was entitled to know of it when he came to exercise his right of peremptory challenge. *Id.* at 787.

Applying these standards, we hold that juror Payton's failure to answer the question posed on *voir dire* prejudiced the Greenwoods' right to peremptory challenge, thus necessitating a new trial. We think the unrevealed information was of "sufficient cogency and significance" that the Greenwoods' counsel was entitled to know of it in deciding how to use his peremptory challenges.[1] The test is an objective one:

1. McDonough argues that Mr. Payton probably would not have been peremptorily challenged and therefore plaintiffs were not prejudiced. It bases this contention on the fact that two other prospective jurors responded that members of their family had been injured, and after further questioning by plaintiffs' counsel, were allowed to remain on the jury. We agree with plaintiffs that this argument has no merit, since "[t]he test is whether counsel was entitled to know

the suppressed information, not whether counsel might have, would have, or probably would have acted on the information." Appellants' Reply Brief at 12; *see Photostat Corp. v. Ball*, 338 F.2d 783, 787 (10th Cir. 1964). An inquiry based on whether counsel would have challenged the juror would be unworkable. Not every suspicious answer to a *voir dire* question leads to a peremptory challenge. Rather, counsel must exercise his intuitive judgment about

the fact that the juror failed to disclose important information unintentionally, or as a result of a misunderstanding of the *voir dire* question, does not foreclose the conclusion that the right to peremptory challenge was substantially impaired. *Id.* at 785, 787. The unrevealed information indicated probable bias of juror Payton because it revealed a particularly narrow concept of what constitutes a serious injury. The prejudice to the Greenwoods was exacerbated by the fact that Mr. Payton became the jury foreman. We accept as true that Mr. Payton did not intentionally conceal the information and held a good-faith belief that his son's injury was not a serious one resulting in disability or prolonged pain and suffering. Good faith, however, is irrelevant to our inquiry. *Id.* at 785. If an average prospective juror would have disclosed the information, and that information would have been significant and cogent evidence of the juror's probable bias, a new trial is required to rectify the failure to disclose it. These conditions were met here.

We therefore reverse and remand this case to afford plaintiffs the opportunity to select a new jury and present their evidence in a new trial.[2]

REVERSED AND REMANDED.

BARRETT, Circuit Judge, dissenting:

I respectfully disagree with the majority's view that juror Payton's failure to disclose his son's accident during *voir dire* prejudiced Greenwood's right of peremptory challenge under our *Photostat Corp. v. Ball.*

The record does not indicate that juror Payton, by his silence, improperly answered the court's *voir dire* query as to whether he or any member of his family had sustained any injuries resulting in any disability or prolonged pain or suffering. Payton simply did not consider his son's broken leg received as the result of an exploding tire, to be an injury resulting in disability or prolonged pain and suffering. He so stated during the post-trial telephone interview. That statement, in my view, does not imply that Payton believed that Billy's injuries did not give rise to a disability or prolonged pain and suffering.

Payton's expressed belief that his son's broken leg did not result in a disability or prolonged pain and suffering must be considered in the context of risks that a parent recognizes in the everyday life of growing children. It does not establish probable bias with consequential prejudice to the Greenwoods. This conclusion is justified, I believe, in light of the unanimous jury assessment of Billy's damages in amount of $375,000.00.

If juror Payton had been prejudiced against Billy's injuries to the extent indicated, it is inconceivable that he would have joined in assessing Billy's damages at $375,000.00. Thus, I would hold that there has been no showing of probable bias by juror Payton with consequent prejudice to Billy.

In lieu of complete reversal, I suggest that a partial remand to the trial court with instruction to conduct an evidentiary hearing into the issue of Payton's possible bias and prejudice is the proper course to be followed.

the prospective juror based not only on what the juror says but also on non-verbal cues indicative of the juror's mental attitude toward the merits of the case and the parties. This opportunity to judge the character and attitudes of the prospective juror may persuade counsel that the juror is capable of fairly and impartially deciding the client's cause despite the giving of an answer indicative of possible bias. It is the opportunity to assess the prospective juror that is important, not whether the juror ultimately is challenged as a result of the opportunity.

2. We emphasize that plaintiffs' cause of action is not a groundless one. The district court found plaintiffs' evidence sufficiently substantial to justify submission of their theory of liability to the jury. We are therefore satisfied that our remand for a new trial is not an exercise in futility.