Billy G. GREENWOOD, et al.,
Plaintiffs-Appellants,

v.

McDONOUGH POWER EQUIPMENT,
INC., Defendant-Appellee.

No. 80–1698.

United States Court of Appeals,
Tenth Circuit.

April 9, 1984.

Rehearing Denied May 9, 1984.

---

Dan L. Wulz, Topeka, Kan. (Gene E. Schroer, Topeka, Kan., with him on the brief) of Jones, Schroer, Rice, Bryan & Lykins, Topeka, Kan., for plaintiffs-appellants.

Donald Patterson, Topeka, Kan. (Steve R. Fabert, Topeka, Kan., with him on the brief) of Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendant-appellee.

Before BARRETT and McKAY, Circuit Judges, and BRIMMER, District Judge.[*]

## OPINION ON REMAND

BARRETT, Circuit Judge.

Billy G. Greenwood (Billy), a minor, by and through his parents, John and Freda Greenwood (Greenwoods) appeals from an adverse jury verdict and related judgment in a products liability action predicated upon strict liability. Jurisdiction rests upon diversity of citizenship. The facts will be discussed only insofar as relevant for purposes of our decision.

On May 25, 1976, Jeff Morris, thirteen years of age, was mowing the Morris yard, pursuant to his father's instructions, on a riding mower manufactured by appellee, McDonough Power Equipment, Inc. (McDonough). Jeff had previously operated the mower approximately thirty hours over a three to four year period.

On this particular day, Troy Greenwood, Billy's older brother, was riding on the mower with Jeff. The Morrises and Greenwoods were next door neighbors. While operating the mower, Jeff watched the left front wheel to make certain that he was getting an even cut. Jeff was aware that Billy, two years of age, and several other children, were playing at and around a swing set in the back yard, approximately twenty-five feet from the area where he was mowing.

While Jeff was mowing the yard, Billy, undetected by Jeff, approached the mower to pick up a doll in the path of the mower. Immediately prior to the accident, Jeff, upon realizing that Billy was in the path of the mower, shouted "watch out!" Fearing that he could not stop before hitting Billy, Jeff turned the mower to the right to avoid hitting Billy. During the course of the turn, the left front tire of the mower went over Billy's left foot. Billy subsequently kicked at the mower with his right foot but both feet went under the mower where they contacted the mower blade, resulting in the loss of both feet.

At the time of the accident, Freda Greenwood was in her home doing housework. Although she was aware that Troy and Billy were playing in the Morris' yard, she was unaware that Jeff was mowing the yard until Troy notified her of the accident.

Within their complaint, the Greenwoods alleged that (1) the mower was of defective design and workmanship, and negligently constructed (2) the defects of the mower were hidden and latent and could not be discovered by general observation or superficial examination (3) the defects were due to McDonough's negligence (4) the mower was not fit for its intended purpose (5) Billy sustained permanent disability and (6) that, as Billy's parents, they sustained severe emotional shock and damages.

[*] Chief Judge of the United States District Court for the District of Wyoming, sitting by designation.

Within its answer, McDonough denied that the mower was negligently or improperly designed or that it was unfit for its intended use. McDonough also alleged that the combined negligence of Ira Morris, as the owner of the mower, and Jeff Morris, as the operator of the mower, and that of John and Freda Greenwood, caused the injuries and damages to Billy.

Following several pretrial motions, the case proceeded to trial on the basis of strict liability. The Greenwoods alleged that the mower was defective because (1) the blade was below the deck of the mower (2) the blade bar, as manufactured, was not within McDonough's manufacturing tolerances thus causing the blade level to be below the deck, aggravating the injury to the left foot (3) the blade was improperly designed (4) the blade brake-clutch was defectively designed in its failure to provide a deadman control for stopping and (5) the blade brake-clutch was defectively designed in durability.

The trial extended over a three-week period. The parties presented substantial evidence supportive of their respective contentions. McDonough's defense throughout trial was that the mower was not negligently designed and that the combined negligence of the Morris' and Greenwood's gave rise to the accident and injuries sustained by Billy. The trial court's instructions to the jury included Instruction No. 8 on strict liability:

> Even though you may find and believe that the defendant exercised all possible care with regard to the product, under the strict liability theory defendant is legally at fault and therefore liable for plaintiff's injuries if the product was defective and unreasonably dangerous when it left defendant's control and the defective condition caused, in whole or in part, plaintiff's injuries.

> A defendant may be liable under the strict liability theory if the product was defective and unreasonably dangerous and the defective condition caused plaintiff's injuries even though plaintiff did not buy the machine or enter into any contractual relation with defendant.
> (R., Vol. II at p. 296).

The jury, in accordance with the law of Kansas, was allowed to compare the fault of McDonough, Jeffrey Morris, Ira Morris, and Freda Greenwood. The jury returned a verdict finding McDonough, 0% negligent, Jeffrey Morris, 20% negligent, Ira Morris, 45% negligent, and Freda Greenwood, 35% negligent. The jury also assessed damages at $0.00. Upon being instructed by the trial court that inasmuch as Billy had lost both feet he had definitely suffered some damages, the jury reconvened for further deliberations, and found that Billy had been damaged in the amount of $375,000.00. The district court thereafter entered judgment that Billy take nothing, that the action be dismissed on the merits, and that McDonough recover its costs.

On appeal, the Greenwoods contend the trial court erred, *inter alia*, in (1) denying their motion to approach the jurors and in denying leave to subpoena the jurors to give testimony at the hearing on plaintiffs' motion for a new trial, and (2) in admitting McDonough's expert testimony that the blade bar was not that shipped with the machine, inasmuch as McDonough failed to provide said information in interrogatory responses.

## I.

The Greenwoods contend the district court erred in denying their motion to approach the jurors and in denying leave to subpoena the jurors to give testimony at the hearing on their motion for a new trial. The Greenwoods also contend they are entitled to a new trial for juror misconduct.

The judgment against Billy and in favor of McDonough was entered on April 25, 1980. On April 29, 1980, the Greenwoods filed a motion to approach the jurors contending:

> In support of this Motion, plaintiff shows to the Court:
>     *      *      *      *      *      *

5. That plaintiffs are of recent information and belief that the jury foreman's, Mr. Payton, son may have been injured at one time, which fact Mr. Payton did not state in response to juror voir dire questions.

(R., Vol. II at p. 325).

During his voir dire, counsel for the Greenwoods related:

Now the judge asked you about facts of the accident. There were several newspaper articles about four years ago. This accident occurred at Cullen Village out just south of town and involved loss of both feet to young Mr. Billy Greenwood ....

(R., Vol. XXI at p. 37).

Thereafter, the district court, in its voir dire, asked the prospective jurors:

Now, how many of you have yourself or any members of your immediate family sustained any severe injury, not necessarily as severe as Billy, but sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain or suffering, that is you or any members of your immediate family.

(R., Vol. XXI at p. 39).

One juror answered affirmatively, and after additional questioning by the Greenwoods' attorney as to his impartiality, was allowed to remain on the jury. Payton did not respond.

On April 30, 1980, the district court entered a memorandum and order denying the Greenwoods' motion to approach the jurors. The district court summarized its denial of the Greenwoods' motion by observing that interviews of jurors by persons connected with a case are not favored except in extreme situations, *citing to Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953); *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). The district court also adopted, by appending, *Silkwood v. Kerr-McGee Corp.*, No. CIV–0888 (W.D.Okla. June 20, 1979), declaring it "controlling here."

On May 1, 1980, the Greenwoods filed a second motion to approach the jurors, alleging:

Counsel for plaintiff shows to the court that to our best recollection and belief, Juror Payton did not answer counsel's question in the affirmative as to whether he or any member of his immediate family had ever been seriously injured. The Affidavit of John G. Greenwood attached affirms that Juror Payton's son was seriously injured in a truck tire explosion. Had voir dire questions been answered truthfully, further examination may have revealed grounds to challenge Juror Payton for cause, or affected counsel's decisions with respect to peremptory challenges.

(R., Vol. II at p. 345).

On May 5, 1980, the district court entered an order granting, in part, the Greenwoods' second motion:

Upon due consideration, but cognizant of the parties' need for a speedy ruling, the Court, in an abundance of caution, has determined to grant the motion in a limited degree. The motion will be generally overruled with the exception that counsel for plaintiff will be allowed to inquire of juror Ronald Payton regarding alleged injuries sustained by his son from the explosion of a truck tire.

The inquiry should, of course, be brief and polite. Defense counsel must be present. The witness should not be unnecessarily inconvenienced. The inquiry should be undertaken telephonically or at a place convenient to the juror. The juror should not be summoned to Topeka solely for this purpose.

Counsel should be informed that the Court's review of the court reporter's notes of voir dire indicates that plaintiff's counsel's question should have elicited a response from the juror only if (1) his son was in an accident as alleged *and* (2) the son sustained a disability or suffered prolonged pain.

(R., Vol. II at p. 348).

Counsel for the Greenwoods and McDonough subsequently arranged for a confer-

ence call interview with juror Payton. During the course of the interview, which was not preserved as part of the record, juror Payton related that his son had received a broken leg as the result of an exploding tire. According to counsel for the Greenwoods, Payton related that "it did not make any difference whether his son had been in an accident and was seriously injured", "that having accidents are a part of life", and that "all his children have been involved in accidents."[1] According to McDonough's counsel, Payton "did not regard it [son's broken leg] as a 'severe' injury and, as he understood the question, did not result in any 'disability or prolonged pain and suffering'. As far as Mr. Payton is concerned he answered counsel's question honestly, and correctly, by remaining silent."[2] Nothing in the record reflects that the Greenwoods made any effort to record or preserve the interview. Having moved for the interview with Payton, the Greenwoods' counsel was responsible for preserving a proper record for the trial court's consideration and for our review on appeal.

Both parties cited *Photostat Corporation v. Ball*, 338 F.2d 783 (10th Cir.1964) in support of their respective positions that Payton's failure to relate his son's accident during voir dire did, or did not, prejudice the Greenwoods' right of peremptory challenge.

In *Photostat*, we held that when four prospective jurors in a negligence case arising out of an automobile accident withheld information as to their personal involvement in accidents with resultant claims, for which they were paid, a defendant was entitled to a new trial because of the prejudice to his right of peremptory challenge, even assuming that the jurors had good intentions and were not disqualified for cause. Within *Photostat* we observed:

> We have said that a "juror's answer to questions touching his state of mind is primary evidence of his competency", and in case of doubt, justice demands

that the challenge for cause be allowed. *United States v. Chapman*, 10 Cir., 158 F.2d 417, 421. In *Consolidated Gas and Equipment Company of America v. Carver*, 10 Cir., 257 F.2d 111, we recognized the burden on the complaining litigant in a post-verdict hearing to show that failure of a juror to fully and truthfully answer questions propounded to the panel concerning his experience in similar litigation resulted in prejudice to his cause. We embraced the settled rule which moves the court to act only upon a showing of probable bias of the juror with consequent prejudice to the unsuccessful litigant. Courts act on probabilities, not possibilities, and if the suppressed information is so "insignificant or trifling" as to indicate only a remote or speculative influence on the juror, the right of peremptory challenge has not been affected. See also *Crutcher v. Hicks* (Ky.), 257 S.W.2d 539, 38 A.L.R.2d 620.

The prospective juror in *Consolidated Gas and Equipment Company of America v. Carver*, supra, was then a plaintiff in a state court suit for actual and exemplary damages. And, the suit in which he was a plaintiff and the one in which he was a prospective juror "bore marks of similarity". In these circumstances we were of the view that if the juror had disclosed the pendency of his action in the state court, he would have been excused for cause, and if not for cause, the defendant would have exercised one of his peremptory challenges; that "[w]hether so intended or not, the effect of the silence of the juror was to deceive and mislead the court and the litigants in respect to his competency. And such deception and misleading had the effect of nullifying the right of peremptory challenge as completely as though the court had wrongfully denied such right." Id. p. 115.

In this post-mortem inquiry, we cannot know of course what counsel would have

---

1. Appellants' brief at p. 7.

2. Appellee's brief at p. 18.

done with the suppressed information. Nor can we take his post-mortem word for it. *But we need not presume to speculate on the judgment he would have made. It is enough, we think, to show probable bias of the jurors and prejudice to the unsuccessful litigant if the suppressed information was of sufficient cogency and significance to cause us to believe that counsel was entitled to know of it when he came to exercise his right of peremptory challenge.* If so, the suppression was a prejudicial impairment of his right.

Id. at 786–87, (emphasis supplied).

Under *Photostat,* the failure of a juror to fully and truthfully answer questions propounded to the panel is deemed reversible error upon a showing of probable bias of the juror with consequential prejudice to the unsuccessful litigant. Insignificant or trifling suppressed information indicative only of a remote or speculative influence on the juror is not deemed prejudicial. Suppressed information is accordingly actionable only if it is of "sufficient cogency and significance" to cause us to believe that counsel was entitled to know of it when he came to exercise his right of peremptory challenge.

In our prior opinion in this case, 10th Cir., 687 F.2d 338, the panel majority held (Barrett, Circuit Judge, dissenting) that under the *Photostat* standards, juror Payton's failure to answer the question posed on voir dire prejudiced the Greenwoods' right to peremptory challenge, thus necessitating a new trial. The majority, in reversing and remanding, reasoned that (1) the unrevealed information was of "sufficient cogency and significance" that the Greenwoods' counsel was entitled to know of it in deciding how to use his peremptory challenges, (2) the test is an objective one, (3) the unrevealed information indicated probable bias of juror Payton because it revealed a particularly narrow concept of what constitutes a serious injury, (4) the prejudice to the Greenwoods was exacerbated by the fact that Mr. Payton became the jury foreman, (5) good faith on juror Payton's part

in not intentionally concealing the information is irrelevant, and (6) if an average prospective juror would have disclosed the information, and that information would have been significant and cogent evidence of the juror's probable bias, a new trial is required to rectify the failure to disclose it.

The United States Supreme Court granted McDonough's petition for writ of certiorari; the Court thereafter reversed the opinion of this court. *See McDonough Power Equipment, Inc. v. Greenwood,* —— U.S. ——, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Mr. Justice Rehnquist delivered the opinion of the Court, in which Chief Justice Burger and Justices White, Blackmun, Powell, Stevens and O'Connor joined. Mr. Justice Blackmun filed a concurring opinion, in which Justices Stevens and O'Connor joined. Mr. Justice Brennan filed an opinion concurring in the judgment, in which Justice Marshall joined. The opinion of the Court read in pertinent part:

This Court has long held that " '[a litigant] is entitled to a fair trial but not a perfect one,' for there are no perfect trials." (citations omitted.) Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load. Even this straightforward products liability suit extended over a three-week period.

We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered "citadels of technicality." *Kotteakos v. United States,* 328 U.S. 750, 759 [66 S.Ct. 1239, 1245, 90 L.Ed. 1557] (1946) .... The harmless error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "er-

ror" and ignore errors that do not affect the essential fairness of the trial.

\* \* \* \* \* \*

The critical question posed to juror Payton in this case asked about "injuries ... that resulted in any disability or prolonged pain or suffering ...." Juror Payton apparently believed that his son's broken leg sustained as a result of an exploding tire was not such an injury. In response to a similar question from petitioner's counsel, however, another juror related such a minor incident as the fact that his six-year-old son once caught his finger in a bike chain .... Yet another juror failed to respond to the question posed to juror Payton, and only the subsequent questioning of petitioner's counsel brought out that her husband had been injured in a machinery accident ....

The varied responses to respondents' question on *voir dire* testify to the fact that jurors are not necessarily experts in English usage.

\* \* \* \* \* \*

To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection that our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination. Whatever the merits of the Court of Appeals' standard in a world which would redo and reconstruct what had gone before upon any evidence of abstract imperfection, we think it is contrary to the practical necessities of judicial management reflected in Rule 61 [Fed.Rules Civ.Proc. 61] and § 2111 [28 U.S.C. § 2111]. We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial. *Id.* at ––– –––, 104 S.Ct. at 848–50.

## II.

The Greenwoods contend that the trial court erred in allowing McDonough's expert, Jackson, to testify at trial that the blade bar on the mower at the time he inspected it was not the blade bar that was shipped on the mower.

During the course of discovery, the Greenwoods deposed Harold P. Jackson, Chief Engineer and Director of Research Development for McDonough, giving rise to the following colloquy:

Q I will say it the other way around. Was the machine in substantially the same condition as it left the factory, to the best of your knowledge?

A (Jackson) To the best of my knowledge. The only thing that I saw, it looked as if the right side of the deck—this is the opposite side from where the accident happened—had been hit against something and sprung out of shape.

(R., Vol. V at p. 78).

Jackson subsequently testified at trial, over the Greenwoods' objection, that the blade bar on the machine at the time he inspected it after the accident was "not the blade bar that was shipped with the machine." (R., Vol. XXIII at p. 1444).

The Greenwoods contend that the admission of such testimony during the course of the trial gave rise to reversible error pursuant to *Smith v. Ford Motor Company*, 626 F.2d 784 (10th Cir.1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981).

The plaintiff's injuries in *Smith* were the result of an automobile accident. In *Smith* we held that when a party relates within a pretrial discovery order that one of his

expert witnesses, a doctor, will testify exclusively to his treatment of a patient and his prognosis, it is prejudicial error to permit the doctor to testify at trial relative to the proximate cause between the automobile seat belts employed and certain injuries sustained. In *Smith*, the only causative evidence presented to the jury relative to the plaintiff's injuries, beyond the stipulated occurrence of the accident, was the doctor's challenged testimony that certain injuries occurred because the seat belt was not functioning properly.

Specifically, the doctor in *Smith*, in response to the question as to what caused the injuries to the spleen and pancreas, testified "that the probability is overwhelming that the injury to the pancreas resulted from the automobile accident and specifically, the evidence is good that the seat belt was involved in that injury." 626 F.2d at p. 790. We held that this testimony, admitted over objection, gave rise to reversible error inasmuch as it was presented by a doctor who was listed in the pretrial disclosure order as an expert who would testify *only* to treatment and prognosis. Ford Motor had previously deposed three other doctors, all witnesses of Smith, relative to treatment and prognosis. Accordingly, we concluded that the admission of his testimony relative to causation (as distinguishable from treatment and prognosis) constituted such surprise as to rise to prejudicial error.

We do not believe that *Smith* applies here. During Jackson's deposition he stated that the blade on the mower at the time he inspected it had a blade travel lower than that of the original manufacture. He did not state that the blade bar on the mower was not the blade bar shipped with the mower. During trial, Jackson testified that the blade bar on the mower at the time he inspected it, although of McDonough manufacture, was not the blade bar shipped with the mower. He also stated that he was told that the blade bar on the mower at the time he inspected it was the blade bar on the mower at the time of the accident. Jackson did not testify that the different blade bar caused the blade travel

to be lower than that of original manufacture, nor did he retract from his deposition statement that the mower blade had a blade travel lower than that of original manufacture.

Jackson was, accordingly, consistent in his testimony that the blade had a blade travel lower than that of the original manufacture. This testimony was supportive of the Greenwoods' position. Under these circumstances, Jackson's trial testimony that the blade bar on the mower was not the one shipped with the machine can not be deemed prejudicial.

Although counsel for the Greenwoods objected and alleged surprise when Jackson testified that the blade bar was not the one shipped with the mower, there has been a failure to establish that Jackson's testimony was prejudicial. The Greenwoods did not move for a continuance nor have they displayed the manner in which Jackson's observation prejudiced them or what steps they may have pursued to cure the alleged prejudice.

As set forth, *supra*, the district court instructed the jury that McDonough would be liable for Billy's injuries if the mower was defective and unreasonably dangerous when it left McDonough's control and if the defective condition caused, in whole or in part, Billy's injuries. The court's instructions are in accord with our prior decisions. *See Barber v. General Electric Company*, 648 F.2d 1272 (10th Cir.1981); *Fabian v. E.W. Bliss Company*, 582 F.2d 1257 (10th Cir.1978); *Bruce v. Martin-Marietta Corporation*, 544 F.2d 442 (10th Cir. 1976); *Symons v. Mueller Company*, 526 F.2d 13 (10th Cir.1975); *Sterner Aero AB v. Page Airmotive, Inc.*, 499 F.2d 709 (10th Cir.1974). The Greenwoods failed to establish McDonough's liability. Thus, we hold the contention that Jackson's trial testimony gave rise to reversible error is without merit.

Billy's injuries were caused when his feet moved under the mower shell and contacted the mower blades. The cause of the accident, *i.e.*, contact with the mower

blades, is not in dispute. The Greenwoods do not contend that Billy would not have been injured if a different blade bar had been on the mower. Rather, they contend, and possibly correctly, that the blade bar on the mower at the time of the accident aggravated Billy's injuries. However, this is of no moment, when, as here, the Greenwoods failed to establish that McDonough was strictly liable for the injuries received in the accident, even though Jackson consistently testified that the blade on the mower had a blade travel lower than that of original manufacture.

## III.

We have considered Greenwoods' remaining allegations of error and find them individually and collectively without merit.

AFFIRMED.

McKAY, Circuit Judge, concurring:

The test now to be applied in cases involving juror answers to *voir dire* questions is:

> [T]hat to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equipment, Inc. v. Greenwood,* — U.S. —, —, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).

Counsel conceded that "[a]s far as Mr. Payton is concerned he answered counsel's question honestly, and correctly, by remaining silent." Brief for Appellee at 18. That ends the matter. The first leg of the test was not met.

The surprise testimony of defendant's expert witness, Mr. Jackson, was certainly not irrelevant to the question of whether the lowered blade aggravated the injury or who was responsible for the blade being in

that condition. The question on appeal is whether the trial court abused its discretion in admitting that evidence when it had not been included in discovery responses or in the pretrial order. Taken in context with plaintiff's failure to seek a continuance or other remedy to respond to the evidence, the trial court acted within its discretion in admitting the evidence.

While the challenged testimony by Mr. Jackson appears to contradict Mr. Jackson's deposition statement that the machine was in the same condition as when it left the factory, the harm might have been cured by impeachment. It was no surprise that Mr. Jackson's testimony would relate to the condition of the machine when it left the manufacturer. Under the circumstances, the failure to exclude the evidence as the sole remedy was not an abuse of discretion. While *Smith v. Ford Motor Co.,* 626 F.2d 784 (10th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981), is similar, it is not so close as to be controlling. The shift in subject matter, as opposed to detail, is the factor which distinguished that case from this case.

None of the other issues raised on appeal is individually or collectively of enough merit to warrant discussion.

Accordingly, the judgment should be affirmed.