**Forrestine D. LEMAIRE, By and Through her conservator, Howard C. LEMAIRE, and Howard C. Lemaire, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–1577.

United States Court of Appeals, Tenth Circuit.

Aug. 13, 1987.

Peter A. Goldstein, Peter A. Goldstein, P.C., Colorado Springs, Colo. (James S. Bertagnolli, James S. Bertagnolli, P.C., Colorado Springs, Colo., was also on the brief), for plaintiffs-appellants.

Nancy Rice, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., was also on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, and SEYMOUR and ANDERSON, Circuit Judges.

HOLLOWAY, Chief Judge.

This appeal arises from a medical malpractice suit brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1982). After a two-day trial to the court, the district judge issued his findings and conclusions and entered judgment in favor of the defendant. This timely appeal followed, and we now affirm.

## I.

### *The factual background*

The plaintiff, Mrs. Forrestine LeMaire, was hospitalized at Fort Carson Army Hospital in Colorado Springs, Colorado, on January 21, 1982. At that time, the plaintiff had been suffering from fatigue, somnolence and abdominal swelling for approximately six months. By February 1, 1982, her condition had stabilized and she returned home. The plaintiff's condition soon began to deteriorate, however, and she returned to the hospital's emergency room as an outpatient on February 9, 1982.

The attending physician, Dr. Richard Shugar, believed that the plaintiff was suffering from severe congestive heart failure, and he performed diuresis in order to remove some of the excess fluid. However, shortly after the plaintiff's discharge from the hospital, she began to experience some of the earlier symptoms such as insomnia and loss of appetite. The following morning, the plaintiff returned to the emergency room at Fort Carson and was examined by Dr. Lance Hinther. He diagnosed the plaintiff as suffering from diffuse atherosclerotic disease and believed that she was also probably hypervolemic and suffering from congestive heart failure. He therefore readministered diuresis in order to remove some of the excess fluid.

On February 11, the plaintiff suffered a neurologic event which is characterized dif-

ferently by the parties.[1] II R. 67; III R. 18–19. However, both parties agree that by February 13, this "event" culminated in an irreversible stroke. II R. 140–41; III R. 185–86. The plaintiff alleged that this stroke was caused by negligent diagnosis and treatment beginning with her readmission to Fort Carson Army Hospital on February 9, 1982.

## II.

### Admission of lay testimony by Dr. Thomas and nurses Rose, Stoppel and Armstrong

■ At the outset, the plaintiff strenuously argues that the trial court erred in admitting testimony by four lay witnesses —Dr. Thomas and nurses Rose, Stoppel and Armstrong. According to the plaintiff, the defendant's responses to interrogatories indicated that these witnesses would testify in accordance with the medical records supplied to plaintiff's counsel. The plaintiff argues that instead these four witnesses testified that procedures were conducted which were omitted from, or contrary to, the medical records provided during discovery. The plaintiff therefore contends that the trial court should have excluded their testimony.

We are unable to assess this claim in any meaningful fashion, because it is premised on the content of the medical records and responses to interrogatories, both of which were omitted from the record on appeal.[2] Alfonso v. Lund, 783 F.2d 958, 965 n. 4 (10th Cir.1986). Nevertheless the only apparent omission in the medical records relates to a physical examination by Dr. Thomas and the results. See III R. 85–86, 123. However, defense counsel represented at trial that Dr. Hinther's interrogatory responses state that Mrs. LeMaire was examined by Dr. Thomas on February 11, and that he ordered laboratory studies. III R. 87.[3] Further, defendant represents that the supplemental responses to interrogatories identified Dr. Thomas as a treating physician, the precise time he saw the patient, and the location of his orders in the medical records. Answer Brief of Appellee at 5. On this state of the contentions and representations made we reject the claim of error in the trial court's admission of testimony by Dr. Thomas and the three nurses.

## III.

### Admission of expert testimony by Dr. Reiter

■ The plaintiff also argues that the district court erred in admitting opinion testimony by a defense witness, Dr. Reiter, on the subject of neurology. Prior to trial, defense counsel submitted a Second Supplement to Pretrial Order, listing Dr. Reiter as a possible witness and describing him as a cardiologist. Supp. I R. 1. Subsequently, the court accepted Dr. Reiter's qualifications at trial, without objection, as an expert on internal medicine and cardiology. III R. 168–69.

Plaintiff asserts that Dr. Reiter stated during his two depositions that he was not an expert on neurological matters. See III R. 197–98 (references at trial to deposition). At trial, however, Dr. Reiter testified that the plaintiff suffered a transient ischemic

---

1. One of the plaintiff's experts, Dr. Kucinski, testified that Mrs. LeMaire began to have a stroke on February 11, and that the syndrome deepened until she suffered another stroke on February 12 and went into hypovolemic shock. II R. 67, 73–75, 134, 145. Dr. Oliveira, another expert witness for the plaintiff, characterized the incident on February 11 as a "stroke in evolution." III R. 17–18. The plaintiff's physicians, Dr. David Thomas and Dr. Lance Hinther, testified that Mrs. LeMaire suffered a transient ischemic attack on February 11. III R. 96–97, 216. This diagnosis was confirmed by the defendant's expert witness, Dr. Michael Reiter. III R. 185.

2. Shortly after oral arguments were heard in this case, the plaintiffs moved to supplement the record on appeal with their first set of interrogatories and the defendant's two sets of responses. We denied the motion in an order dated April 10, 1986.

3. We note that one of the plaintiff's experts, Dr. Chester Kucinski, testified that a physician had signed an order at 6:00 p.m. on February 11, but that the signature was illegible. Dr. Kucinski admitted on cross-examination that the order might have been written by Dr. Thomas. II R. 137. Dr. Thomas subsequently testified that the signature was his. III R. 95, 105.

attack on February 11 and an irreversible stroke on February 13. The plaintiff objected, arguing that Dr. Reiter was not qualified to render a neurological opinion. III R. 195. After allowing plaintiff to voir dire the witness, the court overruled the objection and held that Dr. Reiter was qualified under Fed.R.Evid. 702 to render a neurological opinion. On appeal, the plaintiff argues that the testimony should have been excluded because Dr. Reiter had stated in his two depositions that he lacked expertise in neurological matters.

We cannot agree that the deposition statements repeated in the trial record demonstrate any abuse of discretion in the trial judge's ruling accepting Dr. Reiter as competent to render a neurological opinion. We addressed a similar situation in *Perry v. Winspur*, 782 F.2d 893 (10th Cir.1986). There the plaintiff alleged that he had suffered chemical burns by coming into contact with a 90% concentration of hydrogen peroxide, and that two plastic surgeons committed malpractice by failing to immediately flood the exposed areas with water. Among the defense witnesses was an expert on plastic surgery and burn treatment, who testified about the effect on the skin from exposure to 90% hydrogen peroxide. On appeal, the plaintiff claimed that the testimony should have been excluded because, *inter alia*, the doctor had not been endorsed as an expert on hydrogen peroxide.[4] We rejected the claim, pointing out that the defendants had generally endorsed him before trial to testify about the standard of care for plastic surgery and the treatment of chemical burns. *Id.* at 894–95. We stated:

> The purpose of disclosing the topic on which an expert is expected to testify is to minimize surprise at trial. The primary issue involved in this case concerned whether [the plaintiff] suffered chemical burns as a result of exposure to a 90 percent concentration of hydrogen peroxide and the appropriate treatment for such exposure. We fail to see how appellants could have been justifiably surprised by Dr. Albin's testimony given the nature of the issue involved and his endorsement. Any discussion of the proper treatment for exposure to a chemical would necessarily involve the effects of exposure to that chemical.... Appellants were adequately apprised of the expected testimony of Dr. Albin, and the district court did not abuse its discretion by permitting such testimony.

*Id.* at 895.

We think *Perry* is persuasive here. First, the nature of the plaintiff's neurological event on February 11 was a contested issue in the case and bore directly on the type of treatment needed. Further, Dr. Reiter was endorsed at trial, without objection, as an expert on internal medicine and cardiology. III R. 168–69. In these circumstances, as in *Perry*, we feel that plaintiff's counsel should have foreseen the general nature of Dr. Reiter's testimony in light of his endorsement as an expert on internal medicine and cardiology, and the undisputed relationship between the patient's neurological and cardiovascular condition.[5]

---

**4.** The plaintiff also contended on appeal that the doctor was unqualified to render an opinion about the effects of exposure to 90% hydrogen peroxide. We disagreed, stating:

> As a plastic surgeon and an expert in the treatment of burns, it was not unreasonable for the district court to permit Dr. Albin to testify as he did despite his limited knowledge of and experience with high concentrations of hydrogen peroxide. The degree of expertise or knowledge affects credibility, and appellants had every opportunity to challenge Dr. Albin's credibility during cross-examination. The district court's ruling on this matter was proper.

782 F.2d at 895.

**5.** We feel that the plaintiff's reliance on *Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir.1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981), is misplaced. In *Smith*, the plaintiff suffered serious internal injuries as the result of an automobile collision. Prior to trial, the plaintiff stated that Dr. James Freston would testify as an expert regarding his medical treatment and prognosis. At trial, however, Dr. Freston also testified, over objection, that the pancreas injury was caused by the collision and the type of seatbelts used.

We reversed, holding that Dr. Freston's causation testimony was not disclosed prior to trial, and that the testimony should therefore have been excluded. In the instant case, however, Dr. Reiter repeatedly stated during his trial testi-

We also note that plaintiff's counsel failed to ask for a continuance in the bench trial when Dr. Reiter proceeded to testify regarding the patient's neurological status. Although counsel was under no obligation to seek such a break in the trial, *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49, 53 n. 4 (8th Cir.1982), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983), we agree with the First Circuit that "the remedy for coping with surprise is not to seek reversal after an unfavorable verdict, but a request for continuance at the time the surprise occurs. No such request was made here, undoubtedly because a continuance was not needed." *Szeliga v. General Motors Corp.*, 728 F.2d 566, 568 (1st Cir. 1984); *accord O'Donnell v. Georgia Osteopathic Hosp. Inc.*, 748 F.2d 1543, 1549 (11th Cir.1984); *De Laval Turbine, Inc. v. West India Industries, Inc.*, 502 F.2d 259, 263 (3d Cir.1974); *cf. Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir. 1987) (rejecting defendant's claim of surprise in part because it failed to move for a continuance when plaintiff's counsel allegedly changed his theory in opening statement); *Greenwood v. McDonough Power Equip., Inc.*, 731 F.2d 690, 697 (10th Cir. 1984) (rejecting plaintiff's contention of surprise in part because it failed to move for a continuance when the allegedly prejudicial testimony was given).

In sum, we hold that the court did not abuse its discretion in allowing Dr. Reiter to testify regarding the patient's neurological status.

## IV.

### The claim that the findings were clearly erroneous

Finally, the plaintiff argues that the court committed clear error in finding that defendant was not negligent and that the irreversible stroke suffered on February 13, 1982, was not the result of any treatment received by Mrs. LeMaire.

A finding of fact is "clearly erroneous" if it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 510–11 (10th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986). We are convinced that the district court's findings were not clearly erroneous.

Among other things, there was strong, disturbing and detailed testimony by plaintiffs' expert, Dr. Kucinsky, that care for Mrs. LeMaire was not adequate, to a reasonable degree of medical probability. E. of II R. 68–73. He stated that if she had had appropriate care, the stroke could have been avoided. *Id.* at 78. Dr. Michael Reiter, an expert on internal medicine and cardiology, testified for the defense that the plaintiff suffered a transient ischemic attack on February 11, recovered briefly, and then suffered an irreversible stroke on February 13. III R. 185–86, 199–200. He also testified that the plaintiff's physicians did not deviate from the standard of care, and that neither they nor the nurses did anything that would have caused the stroke on February 13. III R. 186–87, 204. Such testimony was sufficient to create a factual question for the district court to resolve.[6]

The plaintiff argues, however, that Dr. Reiter's testimony was not competent because he failed to state his opinions in terms of a "reasonable degree of medical probability." In actions brought under the Federal Tort Claims Act, we apply the law of the state in which the alleged act or omission occurred. *Holler v. United States*, 724 F.2d 104, 105 (10th Cir.1983); *Collins v. United States*, 708 F.2d 499, 500 (10th Cir.1983). Since the plaintiff received treatment at Fort Carson Army Hospital in

---

mony that he was not a neurological expert. III R. 183, 189–90, 196, 198–99. As a result, we feel the claimed inconsistency between his testimony during his deposition and at trial did not require exclusion on the basis of surprise to the plaintiff. *See Greenwood v. McDonough Power Equip., Inc.*, 731 F.2d 690, 696–97 (10th Cir. 1984), *id.* at 698 (McKay, J., concurring).

6. Both Dr. Kucinsky and Dr. Reiter were accepted as experts in cardiology and internal medicine but they were not treating physicians of Mrs. LeMaire.

Colorado Springs, we must apply Colorado law in determining the competency of Dr. Reiter's testimony.

Under Colorado law, a medical opinion is admissible if founded on reasonable medical probability. *Thirsk v. Ethicon, Inc.,* 687 P.2d 1315, 1318 (Colo.Ct.App.1983); *see also Daugaard v. People,* 176 Colo. 38, 488 P.2d 1101, 1103–04 (1971) (proceeding involving termination of parental rights). However, the fact that the expert cannot support his opinion with certainty goes only to its weight not to its admissibility. *See Marlow v. Atchison, Topeka & Santa Fe Ry. Co.,* 671 P.2d 438, 443 (Colo.Ct.App. 1983); *see also Bean v. United States,* 533 F.Supp. 567, 578–79 (D.Colo.1980) (applying Fed.R.Evid. 702 in holding that physician's inability to support causation testimony with a reasonable degree of medical certainty "goes to the weight we give his testimony, not to its admissibility").

Although the Colorado courts have not specifically addressed the issue, we think they would examine the entire substance of Dr. Reiter's testimony to determine whether he intended to express an opinion based on a reasonable degree of medical probability. *See Norland v. Washington Gen. Hosp.,* 461 F.2d 694, 697–98 (8th Cir.1972); *Schiles v. Schaefer,* 710 S.W.2d 254, 262 (Mo.Ct.App.1986); *Azure v. City of Billings,* 182 Mont. 234, 596 P.2d 460, 472 (1979); *Williams v. Dulaney,* 331 Pa.Super. 373, 480 A.2d 1080, 1086 (1984); *Gamble v. Price,* 289 S.C. 538, 347 S.E.2d 131, 132–33 (App.1986); *Bufkin v. Texas Farm Bureau Mut. Ins. Co.,* 658 S.W.2d 317, 321 (Tex.Ct.App.1983). After a careful review of the record, we are convinced that Dr. Reiter's opinion testimony was properly admitted under this standard.

In sum, we hold that Dr. Reiter's opinion testimony was properly admitted and that the district court's findings were not clearly erroneous. We find no reversible error and accordingly the judgment is

AFFIRMED.